2008 UT App 478

Donald RAWLINGS and Jeanette Rawlings, Plaintiffs and Appellants,

v.

Arnold Dwayne RAWLINGS and Paulette Rawlings, Defendants and Appellees.

Arnold Dwayne Rawlings and Paulette Rawlings, as Trustees of the Arnold Dwayne Rawlings Family Trust; Theron LaRell Rawlings; Bryce C. Rawlings; and Carol Lynn R. Masterson, Third-party Plaintiffs and Appellees,

v.

Donald Rawlings and Jeanette Rawlings; and Donald Rawlings and Jeanette Rawlings, as trustees of a trust whose name is unknown, Third-party Defendants and Appellants.

No. 20070797–CA.

Court of Appeals of Utah.

Dec. 26, 2008.

---

M. David Eckersley, Salt Lake City, for Appellants.

M. Dayle Jeffs and Thomas W. Seiler, Provo, for Appellees.

Before GREENWOOD, P.J., THORNE, Associate P.J., and ORME, J.

## OPINION

THORNE, Associate Presiding Judge:

¶1 Donald and Jeanette Rawlings (collectively, the Grantees) appeal from the district court's entry of judgment finding an equitable constructive trust in favor of Dwayne and Paulette Rawlings, LaRell Rawlings, Bryce C. Rawlings, and Carol Lynn R. Masterson (collectively, the Siblings).[1] We reverse the judgment of the district court, as well as an order imposing sanctions against the Grantees for failing to participate in mediation proceedings in good faith.

¶2 This dispute centers on a family farm that Arnold Rawlings transferred to the Grantees by deed in 1967. The Grantees are Arnold and Cleo Rawlings's oldest son, Donald, and Donald's wife, Jeanette. The Siblings comprise the rest of Arnold and Cleo's children, along with Dwayne's wife, Paulette. As summarized in greater detail below, the Grantees' position in this litigation is that they own the farm in fee simple pursuant to the 1967 deed from Arnold. The Siblings argue that the Grantees hold the farm in trust for the entire surviving family under a constructive trust theory. After a four-day trial exploring the circumstances of the 1967 deed, the district court agreed with the Siblings and imposed an equitable constructive trust on the Grantees in regard to the farm.

## BACKGROUND

¶3 Arnold acquired the farm from his mother in 1944. In 1966, Arnold was diagnosed with cancer. Arnold believed that he would be unable to obtain state-provided cancer treatment if he retained the farm in his name. This belief motivated Arnold to explore the possibility of transferring the farm to one of his sons as a means of getting it out of his name while still keeping it in the family. On March 24, 1967, Arnold conveyed the farm to the Grantees by warranty deed. Arnold's wife, Cleo, also signed the warranty deed although her name was not on the title to the farm. That same day, each of the Siblings signed quit-claim deeds transferring any interest they may have had in the farm to the Grantees. The Siblings contend that the transfer to the Grantees was always meant to be for their collective benefit as a family farm.

¶4 After the transfer, Arnold and Cleo continued to live and work on the farm as if no transfer had occurred. When Arnold died in 1971, Cleo continued to live on the farm and family members worked the farm for her benefit. In 1974, the Grantees litigated a boundary dispute with the farm's southern neighbor. The Grantees' success in litigating the matter led to a settlement with several title companies, who paid the Grantees $52,000. The Grantees kept the bulk of that money but did distribute portions to Cleo and the Siblings.

¶5 In 1978, the Grantees deeded one of the lots comprising the farm to themselves and Dwayne and Paulette in joint tenancy. About this same time, Donald and Dwayne began a business selling topsoil. In 1993, the Grantees asserted, allegedly for the first time, that they owned the farm free and clear and were not holding it in trust for the Siblings. This dispute over the nature of the Grantees' ownership interest in the farm led to the dissolution of Donald and Dwayne's

---

1. Dwayne Rawlings's full name is Arnold Dwayne Rawlings, and LaRell Rawlings's full name is Theron LaRell Rawlings. We refer to them as Dwayne and LaRell to be consistent with references in the record and to differentiate between Dwayne Rawlings and his father, Arnold Rawlings. We also note that when we employ the term the Siblings as a descriptor of the beneficiaries of the purported trust in this case, the term includes all purported beneficiaries, including Grantees and Arnold and Cleo Rawlings.

business, and the Grantees eventually sued Dwayne and Paulette. Dwayne and Paulette filed a counterclaim and self-described third-party complaint against the Grantees in their individual capacities and as trustees of an alleged trust, asserting a constructive trust over the farm property. The remainder of the Siblings joined in the counterclaim and third-party complaint. After extensive discovery, the district court bifurcated the parties' disputes and decided to first address the constructive trust issue.

¶ 6 Prior to trial, the district court ordered the parties to mediate their disputes. The Grantees informed the Siblings before mediation that they had no intent of considering any settlement of the matter. The Grantees appeared at the mediation session and told the mediator the same thing. The mediation session did not result in a settlement. Afterwards, the Siblings sought sanctions from the Grantees, alleging that they did not participate in mediation in good faith. The district court agreed, and ordered the Grantees to pay the Siblings $2937 in expenses that the Siblings had incurred during the mediation process.

¶ 7 A four-day trial on the constructive trust issue commenced on March 12, 2007. The bulk of the trial was comprised of the Siblings' testimony describing the circumstances of the 1967 transfer and the family's treatment of the farm property after that date. Several of the Siblings testified to conversations that they had had with Arnold prior to the transfer, conversations that the Siblings interpreted as expressing an intent to place the farm in trust. The Grantees used the Siblings' testimony to explore issues regarding the Grantees' payment of debts owed by Arnold, which the Grantees argued supported their position that Arnold intended to transfer the farm to them in fee simple.

¶ 8 At the close of the Siblings' evidence, the Grantees moved for dismissal of the Siblings' constructive trust claims. The Grantees' motion and the Siblings' opposition to that motion relied on very different legal theories as to how the district court should evaluate the evidence at trial. The Grantees argued that the only way a constructive trust could have arisen in this case is if Arnold had attempted to create an express trust at the time of the transfer, but that express trust failed due to the lack of a writing evidencing the trust. Under the Grantees' theory, no trust was created unless Arnold intended to transfer the farm property into trust and Arnold and the Grantees were in a confidential relationship at the time of the transfer. The Siblings theory was much broader, asserting that the district court could simply employ its equitable powers to impose a constructive trust if it felt the circumstances warranted it. The district court requested written briefing from the parties on their respective positions and took the matter under advisement. The Grantees then presented their case, comprised solely of their own brief testimony, and the trial concluded.

¶ 9 Two months after trial, the district court ruled on the constructive trust issue. The district court expressly adopted the Siblings' argument that it could impose a trust relying solely on equitable principles and without regard to Arnold's intent or relationship to the Grantees at the time of transfer. The ruling recited an extensive factual summary of the testimony at trial, rejected the Grantees' alternative argument that the transfer was in consideration of them paying off a prior mortgage, and determined that Arnold had intended the conveyance solely as a mechanism to protect the family's ownership of the farm and did not intend the deed to operate as an actual transfer at all. The ruling concluded with the statement that the district court was "exercis[ing] its equitable powers to impose a constructive trust." In findings of fact prepared from the district court's ruling and later signed by the court, the court found as a factual matter that "Arnold did not consider the [1967] conveyance to be a transfer of his ownership rights in the [farm]."

## ISSUES AND STANDARDS OF REVIEW

¶ 10 On appeal from the district court's final order imposing an equitable constructive trust, the Grantees argue that the Siblings failed to present sufficient evidence in the district court to support the imposition of a trust under the circumstances of this

case.[2] "'When an appellant is essentially challenging the legal sufficiency of the evidence, a clearly erroneous standard of appellate review applies.'" *Hi–Country Estates Homeowners Ass'n v. Bagley & Co.*, 2008 UT App 105, ¶ 10, 182 P.3d 417 (quoting *Reinbold v. Utah Fun Shares*, 850 P.2d 487, 489 (Utah Ct.App.1993)). However, we review a district court's decisions on questions of law, such as the legal requirements for the imposition of constructive trusts, for correctness. *See, e.g., Flake v. Flake*, 2003 UT 17, ¶ 8, 71 P.3d 589 ("The validity of [a] trust is an issue of law, which we review for correctness.").

¶ 11 The Grantees also argue that the district court erred when it imposed sanctions against the Grantees based on their alleged lack of good faith participation in court-ordered mediation. The proper interpretation of court rules presents an issue of law that we review for correctness. *See, e.g., N.A.R., Inc. v. Farr*, 2000 UT App 62, ¶ 5, 997 P.2d 343 ("'A trial court's interpretation of a rule in the Utah Code of Judicial Administration presents a question of law reviewed for correctness.'" (quoting *Loporto v. Hoegemann*, 1999 UT App 175, ¶ 5, 982 P.2d 586)).

## ANALYSIS

### I. The District Court's Finding of an Equitable Constructive Trust

¶ 12 The Grantees first challenge the evidentiary basis for the district court's imposition of an equitable constructive trust. Specifically, the Grantees argue that there is no evidence to support two elements that they assert must exist in order to impose a constructive trust in this case: (1) that a confidential relationship existed between Arnold and the Grantees at the time Arnold transferred the farm to the Grantees and (2) that Arnold intended to transfer ownership of the farm to the Grantees in trust for the Siblings. The Siblings counter that neither a confidential relationship nor any particular intent on the part of Arnold is a prerequisite to a court's imposition of a constructive trust on purely equitable principles. Thus, we

first determine the proper legal analysis for the constructive trust issue and then turn to the question of whether the Grantees have identified an evidentiary barrier to the imposition of a trust in favor of the Siblings.

### A. Trust Requirements

¶ 13 The Grantees and the Siblings present us, and presented the district court, with two conflicting theories for the proper analysis of this case. Confusingly, although the theories are conceptually quite different, they are both properly referred to as constructive trusts. The legal constructive trust theory urged by the Grantees allows for the enforcement, in certain circumstances, of an express trust that would otherwise be unenforceable. By contrast, the Siblings' equitable constructive trust approach does not enforce an otherwise unenforceable express trust, but rather creates and imposes a trust in equity to avoid the unjust enrichment of one who has committed some wrongful act. The district court accepted the Siblings' theory of the case and ruled accordingly. We disagree, and hold that, because the Siblings' claim for relief ultimately relies on a purported unwritten express trust created by Arnold, the Grantees' theory is the proper approach under the circumstances of this case.

¶ 14 The law relating to the creation and enforcement of express trusts is well settled and imposes various rules intended largely to protect the sanctity of property rights and the written instruments transferring those rights. *See, e.g., Jewell v. Horner*, 12 Utah 2d 328, 366 P.2d 594, 597 (1961) (imposing clear and convincing evidence standard upon the attempted "overthrow of a clearly-expressed deed, solemnly executed and delivered"). An express trust is "a fiduciary relationship with respect to property, arising as a result of a *manifestation of intent to create it* and subjecting the person in whom title is vested to equitable duties to deal with it for the benefit of others." *Ashton v. Ashton*, 733 P.2d 147, 151 (Utah 1987) (emphasis added). Thus, when an express trust is claimed to have been created through an inter vivos transfer, the expressed inten-

---

2. The Grantees also raise a statute of limitations argument that we decline to address in light of our resolution of the case in the Grantees' favor on other grounds.

tion of the grantor is perhaps the central element in the claim.

¶ 15 Further, when no written instrument evidences a trust involving real property, the trust is enforceable only in limited circumstances. *See id.* (adopting section 45 of the Restatement (Second) of Trusts); Restatement (Second) of Trusts § 45 (1957) (stating circumstances under which an otherwise unenforceable express trust may be enforced by third-party beneficiaries). One circumstance under which an unwritten land trust may be enforced is when the grantor and grantee of the real property were, at the time of the transfer, in a confidential relationship.[3] Thus, the Grantees argue, a *legal* constructive trust may be imposed only upon evidence of Arnold's intent to create a trust as well as a confidential relationship between Arnold and the Grantees.

¶ 16 The Siblings argue, and the district court accepted, that an *equitable* constructive trust is an available remedy in this case. "Courts recognize a constructive trust as a matter of equity where there has been (1) a wrongful act, (2) unjust enrichment, and (3) specific property that can be traced to the wrongful behavior." *Wilcox v. Anchor Wate Co.,* 2007 UT 39, ¶ 34, 164 P.3d 353. "Such trusts are usually imposed where injustice would result if a party were able to keep money or property that rightfully belonged to another." *Id.* "To establish a wrongful act under Utah law, an entity must have obviously received funds by mistake or participated in active or egregious misconduct." *Id.* ¶ 35; *see, e.g., In Re Unicom Computer Corp.,* 13 F.3d 321, 322 (9th Cir.1994) (involving a case where a creditor mistakenly transferred money to a debtor); *Corporation of the President of the Church of Jesus Christ of Latter–Day Saints v. Jolley,* 24 Utah 2d 187, 467 P.2d 984, 984 (1970) (involving a constructive trust that was placed on a third person after she was given a stolen automobile).

¶ 17 The problem with the application of the Siblings' approach to the circumstances of this case is that the only wrongful act alleged by the Siblings is the Grantees' failure to comply with Arnold's expressed intentions at the time of the transfer. If Arnold did not have and express an intent that the 1967 deed transfer the farm property to the Grantees in trust, then the Grantees taking of the farm property in fee simple under the express language of the deed cannot be deemed wrongful. Conversely, in order for the Grantees' conduct to have been wrongful, Arnold would have needed to express his intent to transfer the farm property into trust—i.e., Arnold would have had to have attempted to create an express trust. Thus, the very circumstances that might entitle the Siblings to equitable relief trigger the application of the various legal rules governing the creation and enforcement of express trusts.

¶ 18 The Siblings seek to use the law of equitable constructive trusts as a *substitute* for the law governing the enforcement of express trusts. As well-intentioned as the district court's application of equitable principles in this case may have been, the practical effect of allowing the sort of equitable concerns presented in this case to trump written deeds would be that "no person could longer rest in the security of his title to property, however solemn might be the instrument on which it was founded." *Jewell,* 366 P.2d at 598 (internal quotation marks omitted). The law governing the enforcement of express trusts is clear and must be applied even when it produces results that, under a pure fairness standard, might arguably be deemed inequitable. *Cf. Ashton,* 733 P.2d at 151 (holding that where an oral express trust exists, section 45 of the Restatement (Second) of Trusts is "controlling").

¶ 19 In sum, there are only two possible ways of characterizing the Grantees' actions in this case. They either acted in violation of Arnold's expressed intent, implicating the law of express trusts and their enforcement by constructive trust, or they committed no wrongful act at all. Either possibility is fatal to the imposition of a trust under the Siblings' equitable constructive trust theory,

---

**3.** The other circumstances described in section 45 of the Restatement (Second) of Trusts have not been raised in this matter.

which is premised on avoiding unjust enrichment. We thus determine that the district court erred when it imposed a trust under the Siblings' theory. Although this determination necessitates our reversal of the district court's judgment in the Siblings' favor, questions remain as to whether the matter can be concluded in either party's favor as a matter of law or whether it must be remanded for further proceedings. To answer these questions, we turn to the Grantees' evidentiary arguments.

## B. Sufficiency of the Evidence

¶ 20 Having accepted the Grantees' application of the law of express trusts as the proper approach for evaluating this case, we examine the particular elements urged by the Grantees and the sufficiency of the evidence to support those elements. It is somewhat unusual for an appellate court to be asked to determine whether there was sufficient evidence to support findings that were not actually made by a trial court. Ordinarily, when the district court applies the wrong legal standard the matter is reversed and remanded so that the district court may consider the evidence under the proper standard. Here, however, the Grantees ask us to simply reverse the district court without remand, arguing that the evidence presented can only lead to a finding of no enforceable trust as a matter of law.

¶ 21 We agree with the Grantees that there is no enforceable unwritten express trust in this case, although we do so based on the district court's findings rather than on our own evaluation of the evidence presented below. After a four-day trial on the issue of Arnold's intent at the time of the 1967 deed, the district court made extensive factual findings about the circumstances surrounding Arnold's execution of the deed. One of these findings was that "Arnold did not consider the conveyance to be a transfer of his ownership rights in the [farm]."

 ¶ 22 This finding of Arnold's lack of intent is necessarily incompatible with the definition of an express trust, which requires

the grantor's "manifestation of intent to create it." See Ashton v. Ashton, 733 P.2d 147, 151 (Utah 1987). An inter vivos trust can be created in these circumstances only by a grantor's intent to transfer property into trust. Cf. Leggroan v. Zion's Sav. Bank & Trust Co., 120 Utah 93, 232 P.2d 746, 748 (1951) ("[T]he test for determining whether a writing has effected a trust or is testamentary in character is whether the maker intended the instrument to have any effect until after his death, or whether he *intended to transfer some present interest.* If, therefore, the father *intended to pass legal title* to the son, as trustee, . . . then the transaction was a valid trust." (emphasis added) (internal quotation marks omitted)). Here, as found by the district court, Arnold did not intend to transfer the farm at all, and we can thus conclude only that he did not intend to transfer the farm into trust. Without Arnold's intent to transfer the farm into trust, there can be no express trust to enforce, directly or by imposition of a legal constructive trust, and the Grantees were entitled to judgment establishing their ownership of the farm under the express terms of Arnold's "clearly-expressed deed, solemnly executed and delivered." See Jewell v. Horner, 12 Utah 2d 328, 366 P.2d 594, 597 (1961).[4]

¶ 23 Under these circumstances, we hold as a matter of law that there can be no express trust in favor of the Siblings. Accordingly, we reverse the district court's judgment on the trust issue and remand this matter for entry of judgment establishing fee simple ownership of the farm in the Grantees.

## II. The District Court's Sanctions Order

 ¶ 24 The Grantees also challenge the district court's order imposing sanctions against them for failing to use good faith in participating in court-ordered mediation. We agree with the Grantees that such sanctions are inappropriate under the circumstances.

---

4. In light of the effect of the district court's finding that Arnold did not intend to transfer the farm, we need not address the question of whether the evidence could demonstrate a confidential relationship between Arnold and the Grantees.

¶ 25 The Siblings sought sanctions against the Grantees after an unsuccessful court-ordered mediation session. According to the Siblings' motion in the district court, the Grantees informed the Siblings prior to mediation that the Grantees did not want to participate in mediation and did not intend to make any proposals or consider any settlement offers in the mediation. The Siblings also asserted that "[a]t the June 27, 2006 mediation, [the Grantees] informed the mediator that they would neither make any offer nor consider any offer that he might present to them, and that they would refuse to attempt to resolve this case other than to let the matter go to trial." The district court found that the Grantees "came to the mediation with a fully formed intention not to participate in the mediation in good faith and had determined that they would not be prepared to discuss all relevant issues in this case" and awarded sanctions against the Grantees.

¶ 26 Mediation proceedings are governed by rule 101 of the Utah Rules of Court–Annexed Alternative Dispute Resolution. *See* Utah R. Ct. ADR 101. Rule 101(c) mandates that "[a]ll parties shall be present, shall be prepared to discuss, and shall have the authority to fully settle, all relevant issues in the case." *Id.* R. 101(c). However, "[t]he parties may terminate the proceedings at any time." *Id.* R. 101(g). The rule further contemplates the circumstances under which sanctions may be imposed against a party: "Upon written recommendation by the mediator or motion by any party, the court may order *absent parties* to show cause why they failed to attend the mediation conference and, if appropriate, why sanctions should not be imposed." *Id.* R. 101(h) (emphasis added).

¶ 27 Here, it is undisputed that the Grantees attended the mediation conference. However, the district court concluded that the Grantees' actions at and prior to the conference violated rule 101(c). Interpreting that rule, the district court stated that it "requires good faith discussion, and while

parties may terminate that process, they may only do so after they have engaged in the settlement process in good faith." This interpretation is flatly contradicted by language elsewhere in the rule, which clearly states that "parties may terminate the proceedings *at any time.*" *See* Utah R. Ct. ADR 101(g) (emphasis added). The rule also contemplates sanctions only when a party fails to attend a mediation conference, not when a party's actions at the conference fail to lead to a settlement. *See id.* R. 101(h); *cf. Avril v. Civilmar*, 605 So.2d 988, 989–90 (Fla.Dist.Ct.App.1992) (quashing sanctions order where the "basis for sanctions [was] merely that defendants were unwilling to make an offer of settlement satisfactory to [plaintiff]"). Finally, we disagree with the district court that the Grantees acted in bad faith or violated rule 101(c). It appears that they merely held a firm belief, vindicated by our decision today, in the validity of their claims such that they had no interest in a compromised settlement. Promptly informing the other parties and the mediator of this fact served to avoid unnecessary time and resources spent in unproductive mediation efforts and cannot be viewed as evidence of bad faith under the circumstances so long as the Grantees otherwise complied with the terms of the rule.[5]

¶ 28 For these reasons, we hold that the district court erred in sanctioning the Grantees for their actions at and leading up to the court-ordered mediation conference. Accordingly, we also reverse the order awarding sanctions and direct that all parties bear their own costs and fees arising from the failed mediation.

## CONCLUSION

¶ 29 We determine that the district court erred in finding that a purely equitable constructive trust can arise under the circumstances presented in this case. Rather, the only potential relief available to the Siblings is the enforcement, by means of a construc-

---

5. We also note that our decision today is consistent with the high degree of confidentiality afforded to the mediation process. *See, e.g., Reese v. Tingey Constr.*, 2008 UT 7, ¶ 8, 177 P.3d 605 (expressing the policy that mediation communications "be protected from postmediation disclosure").

tive trust, of an alleged unwritten express trust. We have determined, however, that an express trust can only exist in this case if Arnold intended to transfer the farm into trust and that the district court's finding that Arnold did not intend to transfer the farm at all precludes an express trust from arising in this case as a matter of law.[6] Accordingly, we reverse the district court's judgment on the trust issue and remand this matter for entry of judgment in the Grantees' favor.

¶ 30 We also reverse the district court's order awarding sanctions against the Grantees for failing to engage in good faith participation in court-ordered mediation. Rule 101 of the Utah Rules of Court–Annexed Alternative Dispute Resolution implicitly contemplates sanctions against parties solely for failing to appear at a mediation conference, and explicitly guarantees the rights of parties to terminate the proceedings at any time. For these reasons, we hold that the district court's imposition of sanctions against the Grantees was improper under the circumstances.

¶ 31 Reversed and remanded.

¶ 32 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and GREGORY K. ORME, Judge.

---

**6.** To the extent that the district court's finding of Arnold's intent potentially affects the validity of the deed itself or requires further findings about the farm's ownership or chain of title, such matters exceed the scope of today's decision, and we express no opinion thereon.