220 P.3d 476 (2009)
2009 UT App 286
In the matter of the ESTATE OF Harold Alma LeFEVRE and Edith K. LeFevre, deceased.
Harold R. LeFevre, Julia Richmond, Jeffrey LeFevre, Daniel LeFevre, Bryce LeFevre, Cynthia C.L. Giles, and Kelly LeFevre, Petitioners, Appellees, and Cross-appellants,
v.
Leland Stout, Respondent, Appellant, and Cross-appellee.
No. 20080234-CA.
Court of Appeals of Utah.
October 8, 2009.
Rehearing Denied November 23, 2009.
*477 Don R. Petersen, Leslie W. Slaugh, and Richard L. Petersen, Provo, for Appellant and Cross-appellee.
Stephen Quesenberry, Provo, for Appellees and Cross-appellants.
Before Associate P.J. THORNE, ORME and McHUGH, JJ.

OPINION
McHUGH, Judge:
¶ 1 Leland Stout appeals from the trial court's judgment in favor of Harold (Hal) R. LeFevre, Julia Richmond, Jeffrey LeFevre, Daniel LeFevre, Bryce LeFevre, Cynthia C.L. Giles, and Kelly LeFevre (collectively, the LeFevre children). Stout contends that *478 the trial court erred by imposing a constructive trust. Stout further argues that the trial court improperly applied a version of the probate code not in effect at the time of the transaction at issue. Finally, Stout claims that the trial court erred in denying his motion for summary judgment. The LeFevre children cross-appeal, arguing that they were entitled to attorney fees. They also contend that the trial court erred in granting Stout a stay pending appeal. We affirm but remand for additional findings consistent with our opinion.

BACKGROUND[1]
¶ 2 The LeFevre children are the children of Harold Alma LeFevre and his first wife, Edith K. LeFevre. During their marriage, Harold and Edith purchased a home in Provo, Utah (the Canyon Road home), where they resided together until Edith died in 1987. After Edith's death, Harold married Ellen Stout, who had five children (the Stout children), including Leland Stout, from a prior marriage. Harold and Ellen lived together in the Canyon Road home until Harold died intestate on March 19, 1993. At the time of his death, the Canyon Road home was titled solely in Harold's name.
¶ 3 Following Harold's funeral, the LeFevre children met informally with Ellen to discuss Harold's estate. At the meeting Ellen agreed to discharge all the LeFevre children's debts owed to Harold. Ellen also proposed establishing a trust for Harold's and her estates. Ellen stated that upon her death, the LeFevre children would receive Harold's estate, including the Canyon Road home, and the Stout children would receive Ellen's property and estate. The LeFevre children agreed to Ellen's proposal and consented to her request to live in the Canyon Road home until her death. The LeFevre children also agreed that Hal LeFevre and Leland Stout would serve as successor co-trustees upon Ellen's death. Their agreement was never put into writing.
¶ 4 On April 19, 1993, Ellen met with her attorney to create a trust. The trust Ellen established did not conform with the terms of her oral agreement with the LeFevre children. Rather, Ellen's trust divided the trust estate equally between the Stout children and the LeFevre children without specifying the distribution of particular assets. The trust also deviated from Ellen's agreement with the LeFevre children in that it named Kelly LeFevre, not Hal LeFevre, as a successor co-trustee.[2] The LeFevre children were never given copies of Ellen's trust, nor were they notified of its terms.
¶ 5 Ellen was subsequently appointed personal representative of Harold's estate, and on July 23, 1993, Ellen transferred the Canyon Road home into her trust. On September 11, 1995, Ellen amended her trust to exclude the LeFevre children as beneficiaries and to distribute the entire trust estate, including the Canyon Road home, to the Stout children. The LeFevre children were not informed of the amendment to Ellen's trust.
¶ 6 In the years following Harold's death, Ellen became increasingly reclusive. Stout assisted Ellen in installing mirrors outside the Canyon Road home so she could see who was at her doorstep without opening the door. She began refusing visits from the LeFevre children. Stout also encouraged Ellen to screen her telephone calls and not to answer calls from the LeFevre children.
¶ 7 Ellen died on October 28, 2004. The Stout children neither informed the LeFevre children of Ellen's death nor published Ellen's obituary. When the LeFevre children learned that Ellen had died, they contacted her attorney and received copies of the trust documents.
¶ 8 In February 2005, the LeFevre children filed a Petition to Set Aside Personal Representative's Transfers from Decedent's Estate, arguing that Ellen had improperly transferred the Canyon Road home to her *479 personal trust. After trial, the district court concluded that the Stout children were unjustly enriched when Ellen modified the terms and conditions of her trust without the consent of the LeFevre children. The trial court then placed the Canyon Road home into a constructive trust for the benefit of the LeFevre children. It also entered judgment voiding Ellen's trust and declaring the LeFevre children the lawful owners of the Canyon Road home. This appeal followed.

ISSUES AND STANDARDS OF REVIEW
¶ 9 On appeal, Stout argues that the trial court erred in finding a constructive trust. Specifically, Stout claims Ellen was not in a confidential relationship with the LeFevre children that would support the trial court's imposition of a constructive trust. "When an appellant is essentially challenging the legal sufficiency of the evidence, a clearly erroneous standard of appellate review applies." Hi-Country Estates Homeowners Ass'n v. Bagley & Co., 2008 UT App 105, ¶ 10, 182 P.3d 417 (internal quotation marks omitted), cert. denied, 199 P.3d 970 (Utah 2008). However, we review the trial court's determination regarding the legal requirements of a constructive trust for correctness. See Flake v. Flake, 2003 UT 17, ¶ 8, 71 P.3d 589 ("The validity of [a] trust is an issue of law, which we review for correctness.").
¶ 10 Stout also contends that the LeFevre children were entitled to only the value of the Canyon Road home at the time of the wrongful transfer. "The availability of a remedy is a legal conclusion that we review for correctness. However, a trial court is accorded considerable latitude and discretion in applying and formulating an equitable remedy, and [the court] will not be overturned unless it [has] abused its discretion." Ockey v. Lehmer, 2008 UT 37, ¶ 42, 189 P.3d 51 (alterations in original) (footnote and internal quotation marks omitted).
¶ 11 Stout next argues that it was improper for the trial court to enter judgment based on a theory of constructive trust because the LeFevre children did not plead a constructive trust. "Whether an issue was properly before the trial court presents a question of law, which we review for correctness." Lee v. Sanders, 2002 UT App 281, ¶ 6, 55 P.3d 1127.
¶ 12 Finally, Stout claims that the trial court erred in denying his motion for summary judgment because the statute of limitations barred the LeFevre children's claims. "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Orvis v. Johnson, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted). We review the trial court's application of a statute of limitations for correctness. See Russell Packard Dev., Inc. v. Carson, 2005 UT 14, ¶ 18, 108 P.3d 741.
¶ 13 On cross-appeal, the LeFevre children argue that the trial court erred in failing to award them attorney fees and costs. "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." Valcarce v. Fitzgerald, 961 P.2d 305, 315 (Utah 1998).
¶ 14 The LeFevre children also challenge the trial court's grant of a stay pending appeal pursuant to rule 62(d) of the Utah Rules of Civil Procedure. "The trial court's interpretation of the rules of civil procedure presents a question of law which we review for correctness." Nunley v. Westates Casing Servs., Inc., 1999 UT 100, ¶ 42, 989 P.2d 1077.

ANALYSIS

I. Constructive Trust
¶ 15 On appeal, Stout claims that the trial court erred by placing the Canyon Road home in a constructive trust. First, Stout reasons that the trial court's imposition of a constructive trust was premised on the parties' agreement to create a trust. Stout argues that because the evidence does not support the finding of a confidential relationship between Ellen and the LeFevre children, there can be no constructive trust. While we agree with Stout that a confidential relationship is required to establish some types of constructive trusts, it is not a necessary element *480 in all constructive trusts. The Utah Supreme Court has acknowledged that there is no single definition of a constructive trust. See Parks v. Zions First Nat'l Bank, 673 P.2d 590, 597 (Utah 1983). Indeed, "[t]he forms and varieties of [constructive] trusts. . . are practically without limit." Id. (first alteration and omission in original) (internal quotation marks omitted).

A. Constructive Trusts Can Arise at Law.
¶ 16 Constructive trusts are addressed in the Restatement (Second) of Trusts to the extent that they arise at law from an attempt to create an express trust. See id.; Restatement of Restitution § 160 cmt. a (1937) ("Constructive trusts are not dealt with in the Restatement of Trusts, except in so far as they arise out of express trusts or attempts to create express trusts."). For example, section 44 of the Restatement (Second) of Trusts describes one situation where a constructive trust may arise. This section reads, in pertinent part:
(1) Where the owner of an interest in land transfers it inter vivos to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, as required by the Statute of Frauds, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the transferor, if
. . . .
(b) the transferee at the time of the transfer was in a confidential relation to the transferor. . . .
Restatement (Second) of Trusts § 44(1) (1959).
¶ 17 The Utah Supreme Court has explained that section 44 does not apply "unless an `express trust' has been established, or at least asserted, as the basis of entitlement to property." Parks, 673 P.2d at 597. The language of section 44 "describes the applicable situation as one in which an express trust has been rendered unenforceable for failure to comply with the requirements of the Statute of Frauds." Id. "In this situation, [section] 44 provides that the intended trust may be imposed, notwithstanding the Statute of Frauds violation, under the guise of a constructive trust, upon the condition that the transferee at the time of the transfer was in a confidential relationship to the transferor." Id. (footnote and internal quotation marks omitted). Thus, a constructive trust may arise at law pursuant to section 44 only where there is evidence of both an oral agreement to create a land trust and a confidential relationship between the parties. See id. at 597-98.

B. A Constructive Trust May Also Be Formed as an Equitable Remedy for Unjust Enrichment.
¶ 18 A more flexible theory of constructive trust is advanced in section 160 of the Restatement of Restitution. See id. at 599. This section permits the application of a constructive trust "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Restatement of Restitution § 160 (1937). Unlike a constructive trust imposed at law to give effect to an oral express trust, a constructive trust arising in equity is not based on the intent of the parties. See Parks, 673 P.2d at 598. The Utah Supreme Court has stated that a constructive trust may be imposed "as a matter of equity where there has been (1) a wrongful act, (2) unjust enrichment, and (3) specific property that can be traced to the wrongful behavior." Wilcox v. Anchor Wate Co., 2007 UT 39, ¶ 34, 164 P.3d 353.

C. The Trial Court Found Both a Constructive Trust at Law and a Constructive Trust as an Equitable Remedy.
¶ 19 Here, the trial court's findings of fact and conclusions of law reflect the imposition of a constructive trust both at law to give effect to an otherwise insufficient express trust and as an equitable remedy to prevent unjust enrichment. Specifically, the trial court concluded,
4. Pursuant to equity, fairness and to effect the intent of Harold and Ellen at the time of Harold's death, the [Canyon Road home] belongs solely to the LeFevre children.

*481 ....
6. Ellen held a confidential or fiduciary relationship with the LeFevre children when they permitted her by common consent to place the [Canyon Road home] in her trust.
7. Ellen and the LeFevre children entered into an agreement regarding the [Canyon Road home], which agreement was that the [Canyon Road home] would be given to the LeFevre children upon Ellen's death and that Hal would be the successor co-trustee of the trust.
8. Ellen abused the confidential, fiduciary relationship with the LeFevre children when she (and the Stout children) changed the material terms and conditions of the agreement, without prior authorization and/or ratification from the LeFevre children.
9. The changed material terms and conditions allowed the Stout children to be unjustly enriched by receiving the [Canyon Road home].
10. Equity requires that the [Canyon Road home] be held as an asset of a constructive trust for the LeFevre children.
The trial court determined that Ellen and the LeFevre children entered an oral agreement to create a trust and that the parties were in a confidential relationship. See generally Parks, 673 P.2d at 597 (stating that an oral agreement and a confidential relationship are required at law to give effect to a constructive trust in the form of an express oral trust). Additionally, the court identified the Canyon Road home as the specific property subject to the constructive trust, concluded that Ellen acted wrongfully, and stated that as a result, the Stout children would be unjustly enriched if they were permitted to retain the house.[3]See generally Wilcox, 2007 UT 39, ¶ 34, 164 P.3d 353 (stating the requirements of a constructive trust as a matter of equity). Therefore, although the trial court made no distinction between the two, it concluded that the elements of both an oral express constructive trust at law and a constructive trust as matter of equity had been established.

D. The LeFevre Children May Prevail on an Equitable Constructive Trust Where a Constructive Trust at Law Fails.
¶ 20 On appeal, Stout argues that only the remedy at law, a constructive trust based on a showing of an oral express trust, was available. We disagree. In Parks v. Zions First National Bank, 673 P.2d 590 (Utah 1983), the husband of a deceased spouse claimed that he was entitled to property purchased by the spouses jointly but titled only in the wife's name based on theories of oral or resulting trust and a claim of constructive trust. See id. at 592, 595. The defendants appealed the trial court's conclusion that the husband had established a constructive trust on the grounds that there was no evidence to support the required element of an oral or implicit agreement to hold the property in trust for the husband. See id. at 596 (relying, in part, on the Restatement (Second) of Trusts § 44 (1959)). The supreme court rejected the "defendants' narrow construction of the law pertaining to constructive trusts." Parks, 673 P.2d at 597. Instead, the supreme court relied on the equitable constructive trust remedy to uphold the constructive trust imposed by the trial court where "the trial court rejected [the husband's] claims based on theories of oral and resulting trusts" because intent had not been established. See id. at 598-600. In discussing the failings of the oral and resulting trust theories, the Parks court explained,
While we acknowledge that the resulting trust theory set forth in [section] 442 [of the Restatement (Second) of Trusts] ... is commonly applied under circumstances as herein presented ..., we are not aware of any rule of law that would inhibit or discourage the application of the constructive trust theory advanced in [section] 160 of the Restatement of Restitution under such circumstances.
Id. at 598-99 (citations omitted).[4]But cf. Rawlings v. Rawlings, 2008 UT App 478, *482 ¶¶ 17, 19, 200 P.3d 662 (declining to apply an equitable constructive trust theory because without a showing of intent to establish an express trust, there could be no wrongful act to support the imposition of a constructive trust), cert. granted, 207 P.3d 432 (Utah Apr. 1, 2009).
¶ 21 As with the resulting trust in Parks, the theory of oral express trust discussed in section 44 of the Restatement (Second) of Trusts and the equitable remedy of constructive trust found in section 160 of the Restatement of Restitution are not mutually exclusive. Cf. 673 P.2d at 598-600 (concluding that a constructive trust could be imposed under section 160 of the Restatement of Restitution where a resulting trust under section 442 of the Restatement (Second) of Trusts failed). Here, the trial court was free to impose a constructive trust where equity required, even if it was the parties' intent to create an express trust. Thus, upon failure of a constructive trust arising at law, such as an oral express trust, the trial court could impose an equitable constructive trust for the benefit of the LeFevre children.
¶ 22 Stout argues that the trial court was incorrect in imposing a constructive trust at law here because the LeFevre children and Ellen did not have a confidential relationship as required to form an oral express trust. See generally Restatement (Second) of Trusts § 44(1)(b) (1959) (requiring that "the transferee at the time of the transfer [be] in a confidential relation to the transferor"). For purposes of our analysis, we assume, without deciding, that Stout is correct. Nevertheless, the trial court's imposition of an equitable constructive trust on specific property to remedy the unjust enrichment of Ellen's children was appropriate. Cf. Parks, 673 P.2d at 598-99 (finding the imposition of a constructive trust on equitable principles proper where the intent element necessary to establish a resulting trust was absent).

E. The LeFevre Children Are Not Entitled to a Windfall.
¶ 23 Stout also argues that the trial court's award of the Canyon Road home to the LeFevre children gave them a windfall because Ellen paid off the mortgage on the Canyon Road home after Harold's death. The comments following section 160 of the Restatement of Restitution indicate that generally the purpose of a constructive trust in equity "is to prevent a loss to the plaintiff and a corresponding gain to the defendant, and to put each of them in the position in which he was before the defendant acquired the property." Restatement of Restitution § 160 cmt. d (1937).
¶ 24 The trial court's ruling did not make any specific findings regarding the value of the Canyon Road home at the time of Harold's death, the amount of any mortgage on the home at that time, the reasonable rental value of the property during the time Ellen occupied it, or the nature of the funds used to extinguish that mortgage. Therefore, we cannot determine whether the LeFevre children actually received a windfall based on the trial court's imposition of a constructive trust. Accordingly, we remand to the trial court to determine whether the LeFevre children have enjoyed a windfall that must be disgorged.

II. Other Claims

A. Adequacy of the Pleadings
¶ 25 Next, Stout argues that the trial court erred in imposing a constructive trust because the court denied the LeFevre children's motion seeking leave to amend their petition to allege a constructive trust. Stout claims that because a theory of constructive trust was not pleaded in the petition, the trial court could not properly enter a judgment imposing a constructive trust.
¶ 26 On October 30, 2007, the LeFevre children filed a motion to amend their petition to include a claim of constructive trust. *483 The LeFevre children had previously argued a theory of constructive trust in opposing Stout's motion for summary judgment, and Stout had responded to the claim. On November 13, 2007, which was also the first day of trial, Stout filed his memorandum in opposition to the LeFevre children's motion for leave to amend. Before commencing trial, the court indicated, "I'm not granting the motion to amend ... because it was never brought up for a request to submit for decision...." However, in ruling on the motion, the court stated,
I'm going to hear the evidence that each side is prepared to give to me and I'll let it fall how it may as to each side's proof and each side's defenses.... I'm going to hear what you ... have....
....
And so if the constructive trust issue involves some allegations of [whether] somebody did something fraudulently, I'll sort that out and see how it falls.
¶ 27 "A pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief...." Utah R. Civ. P. 8(a)(1). This rule "is designed to provide notice of the nature of the claims asserted against [an opposing party] and an opportunity to meet those claims." Cowley v. Porter, 2005 UT App 518, ¶¶ 36-37, 127 P.3d 1224 ("`What [a party is] entitled to is notice of the issues raised and an opportunity to meet them. When this is accomplished, that is all that is required.'" (alteration in original) (quoting Cheney v. Rucker, 14 Utah 2d 205, 381 P.2d 86, 91 (1963))). Furthermore, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party had not demanded such relief in his pleadings." Utah R. Civ. P. 54(c)(1).
¶ 28 Here, Stout had notice of the LeFevre children's claim of constructive trust before trial because it had been raised in summary judgment pleadings and Stout had responded to the claim. Moreover, although the trial court denied the LeFevre children's motion to amend their petition, the court recognized that the conversation and agreement between Ellen and the LeFevre children were directly at issue during trial. Additionally, as a matter of equity, the trial court was free to grant the relief to which the LeFevre children were entitled. See id.; see generally Zion's First Nat'l Bank v. Fennemore, 655 P.2d 1111, 1114 (Utah 1982) (identifying a constructive trust as an equitable remedy). Therefore, it was not error for the trial court to enter judgment in favor of the LeFevre children on a theory of constructive trust.

B. Statute of Limitations
¶ 29 Finally, Stout contends that the trial court erred in denying his motion for summary judgment because the LeFevre children's petition was time-barred. On appeal, the LeFevre children counter that Stout waived a statute of limitations defense because he did not assert this defense in a responsive pleading as required by rule 12(h) of the Utah Rules of Civil Procedure, see Utah R. Civ. P. 12(h); Keller v. Southwood N. Med. Pavilion, Inc., 959 P.2d 102, 106 (Utah 1998). However, the LeFevre children failed to object to Stout's assertion of an unpreserved statute of limitations defense in responding to his motion for summary judgment. Rather, they addressed his defense on the merits, arguing that their claims were not time-barred because the statute of limitations was tolled by the equitable discovery rule. See generally Russell Packard Dev., Inc. v. Carson, 2005 UT 14, ¶¶ 25-33, 108 P.3d 741 (discussing the equitable discovery rule). Accordingly, the LeFevre children waived the right to object to an unpreserved defense on appeal. See Golding v. Ashley Cent. Irrigation Co., 793 P.2d 897, 900-01 (Utah 1990) (noting that by not objecting to unpreserved affirmative defense, the plaintiff waived the defect); Lewis v. Porter, 556 P.2d 496, 497 (Utah 1976) ("Any objection to a defect of parties is waived, if not asserted by a party as provided in Rule 12(h)....").
¶ 30 In ruling on Stout's motion for summary judgment, the trial court determined that there were multiple fact-sensitive questions that could not be resolved on motion for summary judgment. See generally Utah R. Civ. P. 56(c) (allowing grant of summary judgment only when "there is no genuine issue as to any material fact"). Indeed, in *484 ruling on Stout's motion, the trial court identified several questions of fact, some of which bore directly on the parties' statute of limitations and discovery rule arguments. These questions included the degree of trust between Ellen and the LeFevre children; when and to what degree communications ceased between Ellen and the LeFevre children; and whether fraud actually occurred and at what point the fraudulent behavior was discovered. See generally Russell Packard Dev., Inc., 2005 UT 14, ¶ 22, 108 P.3d 741 (noting that "determining when a plaintiff either discovered or reasonably should have discovered his or her cause of action is often a difficult and intensely fact-dependent inquiry").
¶ 31 The trial court made no legal conclusion regarding Stout's statute of limitations defense following trial. Moreover, although Stout briefly raised his statute of limitations defense in a post-trial memorandum, he did not object to the trial court's failure to address his claim after the court issued its memorandum decision and findings of fact and conclusions of law. Therefore, Stout's statute of limitations defense was again waived following trial. See James v. Preston, 746 P.2d 799, 802 (Utah Ct.App.1987) (holding an issue was not sufficiently raised when legal theory was not directly addressed at trial and party did not object to trial court's failure to address the issue in its ruling); see also LeBaron & Assocs. v. Rebel Enters., Inc., 823 P.2d 479, 482-83 (Utah Ct.App.1991) ("[T]he mere mention of an issue in the pleadings, when no supporting evidence or relevant legal authority is introduced at trial in support of the claim, is insufficient to raise an issue at trial and thus insufficient to preserve the issue for appeal."). Accordingly, we do not address the merits of the parties' statute of limitations arguments on appeal.

III. Claims on Cross-Appeal

A. Attorney Fees
¶ 32 On cross-appeal, the LeFevre children challenge the trial court's conclusion that the parties were responsible for their own attorney fees. In support of this argument, the LeFevre children rely on two sections of the Utah Uniform Probate Code. First, the LeFevre children claim that Utah Code section 75-1-310 supports an award of attorney fees. That section reads, "When not otherwise prescribed in this code, the court ... may, in its discretion, order costs to be paid by any party to the proceedings or out of the assets of the estate as justice may require." Utah Code Ann. § 75-1-310 (2008).[5] The plain language of section 75-1-310 indicates that it is in the court's discretion to order the payment of costs  not attorney fees. See State v. Tooele County, 2002 UT 8, ¶ 10, 44 P.3d 680 (stating that "the `best evidence' of a statute's meaning[ is] the plain language of the [statute]"). Furthermore, the Amended Judgment includes a judgment against Stout for the LeFevre children's costs.
¶ 33 The LeFevre children also contend that they are entitled to attorney fees pursuant to Utah Code section 75-3-719, which states, "If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, he is entitled to receive from the estate his necessary expenses and disbursements, including reasonable attorney[] fees incurred." Utah Code Ann. § 75-3-719 (2008). Although Ellen was named personal representative of Harold's estate, the LeFevre children reason that following her death, they "stood in the place of a personal representative and brought this suit in good faith on behalf of the estate." The plain language of the statute limits the person entitled to recover attorney fees to "a personal representative or person nominated as personal representative." Id. The LeFevre children do not meet either of these requirements. Furthermore, the LeFevre children commenced this action not as representatives of the estate but in their individual capacities. Therefore, the trial court did not err in concluding that "[e]ach party shall pay [its] own attorney fees."

*485 B. Stay Pending Appeal
¶ 34 The LeFevre children also argue that the trial court erred in granting Stout's request for a stay pending appeal. They claim that because the judgment was self-executing, "a stay and accompanying supersedeas bond is ineffective and procedurally unnecessary." Because we have now issued our decision affirming the trial court's imposition of a constructive trust, the issue is moot. See Baker v. Stevens, 2005 UT 32, ¶ 9, 114 P.3d 580 ("An appeal is moot if during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." (internal quotation marks omitted)). "We do not address moot claims on appeal," id., and we do not consider this issue to be one that is "capable of repetition yet evading review," In re Johnson, 2001 UT 110, ¶ 15, 48 P.3d 881 (internal quotation marks omitted) (listing exceptions to mootness). Consequently, we decline to address it.[6]

CONCLUSION
¶ 35 The trial court did not err in imposing a constructive trust in equity for the benefit of the LeFevre children to prevent unjust enrichment. However, the trial court did not make the specific findings necessary to determine whether the LeFevre children received a windfall when they were awarded title to the Canyon Road home after the mortgage was paid in full by Ellen. Therefore, we affirm the imposition of the constructive trust on the Canyon Road property, but we remand for additional findings as described in part I.E., see supra ¶¶ 23-24, of our decision. Upon weighing the equities after making those findings, if the trial court determines that the LeFevre children have received a windfall, it may adjust its order and judgment as appropriate to effectuate a disgorgement of the amount of that windfall.
¶ 36 Furthermore, the trial court did not err in imposing a constructive trust because Stout had notice of the claim and the constructive trust was imposed as an equitable remedy. The trial court also did not err in denying Stout's motion for summary judgment, which asserted a statute of limitations defense. Nor did the trial court err in failing to award the LeFevre children's attorney fees. Finally, the LeFevre children's claim that it was improper for the trial court to grant Stout a stay pending appeal is moot.
¶ 37 Accordingly, we affirm but remand for additional findings consistent with our opinion.
¶ 38 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge and GREGORY K. ORME, Judge.
NOTES
[1] The district court detailed its factual findings after trial. "Thus, we relate the facts granting due deference to the trial court's resolution of factual disputes." Cowley v. Porter, 2005 UT App 518, ¶ 2, 127 P.3d 1224 (internal quotation marks omitted).
[2] The LeFevre children contend they would not have consented to this change because Kelly has struggled with drug dependency and never completed high school.
[3] Stout does not contest the trial court's finding of unjust enrichment on appeal.
[4] Although the Restatement (Second) of Trusts addresses resulting trusts separately from constructive trusts imposed to correct the failure of an oral express trust, both types of trust arise at law to give effect to the intent of the parties despite the failure to reduce the trust to writing. In contrast, intent is not a requirement of an equitable constructive trust imposed pursuant to section 160 of the Restatement of Restitution. See Parks v. Zions First Nat'l Bank, 673 P.2d 590, 598 (Utah 1983) ("Indeed, the most notable distinction between constructive trusts and other types of trusts, such as express and resulting trusts, is generally the `intention' element.").
[5] We refer to the current version of the Utah Uniform Probate Code because the sections relevant to resolution of this issue have never been amended.
[6] Because we affirm the trial court's imposition of a constructive trust, we need not address the parties' arguments regarding which version of the probate code should govern in this matter.